## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>**SHEENA MARANDINO et al.,** )<br>**on behalf of themselves and** )<br>**all others similarly situated,** )<br> )<br>**Plaintiffs** )<br> )<br>**v.** )<br> )<br> )<br>**UNITED STATES FIRE INSURANCE** )<br>**COMPANY and THE NORTH RIVER** )<br>**INSURANCE COMPANY,** )<br> )<br>**Defendants.** )<br>_____ ) | **Civil Action No. 23-cv-40072-DJC** |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                  **March 25, 2025**

### I.    Introduction

Plaintiffs Sheena Marandino, Sean Marandino, Nancy Carrigan, Claire Freda, Kelley Freda, Alice Hart, Robert F. Hart, Torre Mastroianni and Congregation of Beth Israel of Worcester (collectively, "Plaintiffs") have filed this lawsuit against Defendants United States Fire Insurance Company ("U.S. Fire") and The North River Insurance Company ("North River") (collectively, "Insurers") seeking a declaratory judgment that Insurers are obligated to pay for damages awarded to Plaintiffs and class members in an underlying state action involving Insurers' insured, Peterson's Oil Service, Inc. ("Peterson Oil") (Count I), and for statutory damages arising from violations of Mass. Gen. L. c. 93A and c. 176D (Count II). D. 1. Insurers have moved for summary judgment on both counts, seeking dismissal without prejudice of the claims regarding a duty to indemnify (Count I) and dismissal with prejudice of claims for unfair insurance claim settlement

practices (Count II).  D. 26.  In addition to opposing the motion for summary judgment, Plaintiffs have moved to strike references to the parties' mediation communications in Insurers' reply memorandum and supplemental affidavit in further support of Insurers' motion for summary judgment.  D. 43.  For the reasons stated below, the Court ALLOWS Plaintiffs' motion to strike, D. 43, DENIES Insurers' motion for summary judgment as to declaratory judgment on the duty to indemnify (Count I) and as to the Mass. Gen. L. c. 93A and c. 176D claims (Count II), D. 26.

## II.    Standard of Review

### A.    <u>Summary Judgment</u>

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  <u>Santiago–Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  <u>Carmona v. Toledo</u>, 215 F.3d 124, 132 (1st Cir. 2000); <u>see</u> <u>Celotex v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  <u>Borges ex rel. S.M.B.W. v. Serrano–Isern</u>, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  <u>Noonan v. Staples, Inc.</u>, 556 F.3d 20, 25 (1st Cir. 2009).  When deciding on a motion for summary judgment, the Court "safely may ignore 'conclusory allegations, improbable inferences, and unsupported speculation.'"  <u>Cochran v. Quest Software, Inc.</u>, 328 F.3d 1, 6 (1st Cir. 2003) (quoting <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir.

1990)); see Rodio v. R.J. Reynolds Tobacco Co., 416 F. Supp. 2d 224, 227 (D. Mass. 2006) (deeming defendant's facts admitted where plaintiff disputed facts but failed to present supported facts that controverted assertions in defendant's statement of facts).

## III.    Factual Background

The Court draws the following facts from the parties' statements of undisputed facts and accompanying exhibits.  D. 27; D. 28; D. 32; D. 33; D. 38.  These facts are undisputed unless otherwise noted.[1]

### A.    The Underlying Action

On or about March 15, 2019, the Plaintiffs sued Peterson's Oil in state court, alleging that Peterson's Oil sold them fuel for home heating which contained more than five percent biodiesel. D. 28 ¶¶ 1, 4–6; D. 33 ¶¶ 1, 4–6.  The Fifth Amended Complaint, D. 27–2, is the current operative complaint in the Underlying Action and Insurers have been defending Peterson's Oil and its officers pursuant to a reservation of rights.  D. 28 ¶¶ 2–3; D. 33 ¶¶ 2–3.  Plaintiffs further allege that fuel containing more than five percent biodiesel does not meet industry standards and caused damage to Plaintiffs' home heating equipment.  D. 28 ¶¶ 4–11; D. 33 ¶¶ 4–11; D. 27–2 ¶¶ 28, 132, 159, 161, 211, 217.  Plaintiffs also allege that the Peterson Defendants did not fully disclose the presence of biodiesel in their fuel, which caused furnaces to operate less efficiency, despite "know[ing] about these issues and conceal[ing] them by, among other things, using its employees to service heating systems."  D. 28 ¶¶ 8–11; D. 33 ¶¶ 8–11; D. 27–2 ¶¶ 122–62, 207, 215.

---

[1] Plaintiffs generally object that Insurers' statement of facts are "improper characterizations of pleadings, deposition transcripts and insurance policies that speak for themselves and/or legal conclusions to which no response should be required" and an improper use of Rule 56.1.  D. 33 at 1-2.  This Court "will not consider [the parties'] factual assertions to the extent that they are immaterial, or constitute conclusions of law."  Terry v. SimplexGrinnell LP, No. 11-cv-40117-TSH, 2013 WL 1332240, at *1 (D. Mass. Mar. 28, 2013).

The Underlying Action is ongoing and, as counsel recounted at the motion hearing, trial is anticipated in October 2025.

**B.**     **The Policies Issued by Insurers**

Insurers issued insurance policies to Peterson's Oil for five years.  D. 28 ¶ 28; D. 33 ¶ 28; D. 27-5 to 27-14.  North River issued a primary commercial general liability policy ("Primary Policy") covering July 5, 2011 to July 5, 2012 and five commercial umbrella liability ("Umbrella Policies") policies covering July 5, 2011 to July 5, 2016.  D. 28 ¶¶ 28-29, 35; D. 33 ¶¶ 28-29, 35; D. 27-5, 27-10 to 27–14.  U.S. Fire issued four Primary Policies covering the period July 5, 2012 through July 5, 2016.  D. 28 ¶¶ 28-29; D. 33 ¶¶ 28-29; D. 27-6 to 27-9.

*1.     The Primary Policies*

The Primary Policies insure Peterson's Oil for "'bodily injury' or 'property damage' only if the:  (1) the 'bodily injury' or 'property damage' is caused by an 'occurrence.'"  D. 28 ¶ 31; D. 33 ¶ 31.  An "occurrence" is defined in the Primary Policies' insurance agreements as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." D. 28 ¶ 33; D. 33 ¶ 33; see, e.g., 27-5 at 177.  "Property damage" is defined in the same as "physical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured."  D. 28 ¶ 34; D. 33 ¶ 34; see, e.g., 27-5 at 178.  The Primary Policies provide liability coverage up to a limit of $1,000,000 per occurrence and $2,000,000 as a general aggregate limit.  D. 28 ¶ 30; D. 33 ¶ 30.  An endorsement to the Primary Policies titled "Limited Coverage – Failure to Supply" limits the amount covered for "bodily injury or property damage arising out of the failure of any insured to adequately supply gas, oil, water,

electricity or steam" to $250,000 "regardless of the number of insureds, claims made or 'suits' brought." D. 28 ¶ 32; D. 33 ¶ 32; see, e.g., 27-5 at 270.

### 2.    The Umbrella Policies

The Umbrella Policies provide additional coverage in the amount of $15,000,000 per occurrence and in the aggregate if "'Property Damage' is caused by an 'Occurrence.'" D. 28 ¶¶ 36–37; D. 33 ¶¶ 36–37. "Property Damage" and "Occurrence" are defined similarly in the Umbrella Policies as they are in the Primary Policies. D. 28 ¶¶ 42–43; D. 33 ¶¶ 42–43; see, e.g., D. 27–10 at 24, 26.

The Umbrella Policies in effect from July 5, 2011 to July 5, 2015 contain a "Failure to Supply Exclusion" which excludes coverage for "'Property Damage' arising out of the failure of any insured to adequately supply gas, oil, water, electricity or steam." D. 28 ¶ 38; D. 33 ¶ 38.

The Umbrella Policies in effect from July 5, 2014 to July 5, 2016 contain a "Failure to Supply Limitation" which excludes coverage for "'Property Damage' . . . arising out of the failure of any Insured to provide an adequate supply of gas, oil, electricity, steam, or any other form of energy, or water." D. 28 ¶ 39; D. 33 ¶ 39. This exclusion expressly "does not apply to . . . 'Property Damage' that is covered by 'Underlying Insurance' for the full limit scheduled as 'Underlying Insurance' by this policy." Id.

The Umbrella Policies in effect from July 5, 2012 to July 5, 2016 contain a "Sublimited Coverage Exclusion" which excludes coverage for property damage "resulting from, arising out of or in any way related to injury, damage, cost or expense for which coverage under any 'Underlying Insurance' is subject to a 'Sublimit.'" D. 28 ¶ 40; D. 33 ¶ 40. A "Sublimit" is defined as "any limit of insurance under any 'Underlying Insurance' applicable to a specific hazard, peril, cause or injury or damage which is less than limits of liability applicable in general in such

5

'Underlying Insurance.'"  D. 28 ¶ 40; D. 33 ¶ 40.  The Umbrella Policies schedule the Primary Policies as "Underlying Insurance."  D. 28 ¶ 41; D. 33 ¶ 41.

**C.    The Declaratory Judgment Actions**

On April 13, 2023, Insurers filed a declaratory judgment action ("U.S. Fire Declaratory Judgment Action") against the Peterson Defendants seeking a declaration that Insurers have no further duty to defend or to indemnify them in connection with the Underlying Action.  U.S. Fire Ins. Co. et. al. v. Peterson's Oil Serv., Inc. et. al., No. 23-cv-40044, 2024 WL 3030538, at *1 (D. Mass. June 17, 2024); D. 28 ¶¶ 25, 44; D. 33 ¶¶ 25, 44.

On June 21, 2023, Plaintiffs filed this action, seeking a declaratory judgment that the Primary Policies and Umbrella Policies issued by Insurers provide coverage for the allegations in the Underlying Action (Count I) and alleging that Insurers violated Mass. Gen. L. c. 93A and c. 176D (Count II).  D. 28 ¶ 26; D. 33 ¶ 26; D. 1.

On September 28, 2023, Insurers filed a motion for summary judgment in the U.S. Fire Declaratory Judgment Action.  D. 28 ¶ 45; D. 33 ¶ 45.  This Court denied Insurers' motion for summary judgment and allowed summary judgment as to the Peterson Defendants on the duty to defend and application of the Failure to Adequately Supply Endorsements, ruling that the duty to indemnify was not yet ripe, but that Insurers had a continuing duty to defend.  D. 28 ¶ 46; D. 33 ¶ 46.

**IV.    Procedural History**

Plaintiffs initiated this action on June 21, 2023.  D. 1.  The Court stayed discovery pending resolution of Insurers' present motion for summary judgment.  D. 24.  On July 31, 2024, Insurers moved for summary judgment.  D. 26.  On December 16, 2024, Plaintiffs moved to strike all references to the parties' mediation communications in Insurers' reply memorandum, D. 37, and

supplemental affidavit in further support of Insurers' motion for summary judgment, D. 38.  D. 43.  The Court heard the parties on the pending motions and took these matters under advisement. D. 50.

## V.     Discussion

### A.     <u>Motion to Strike</u>

Plaintiffs have moved to strike references to the parties' mediation communications and activities, including several sentences on page 11 of Insurers' reply memorandum in support of Insurers' motion for summary judgment, D. 37 at 15, and two paragraphs in their supplemental affidavit from Kristin Gallagher ("Gallagher Affidavit"), D. 38 ¶¶ 5–6, discussing an alleged presentation and settlement offers made during mediation.  D. 43 at 1.  Plaintiffs also seek to strike an exhibit to the Gallagher Affidavit an email communication from the parties' mediator regarding mediation results, D. 38-4.  <u>Id</u>.  Plaintiffs assert these references to the parties' mediation communications are inadmissible pursuant to the parties' confidentiality agreement and Mass. Gen. L. c. 233 § 23C.[2]  D. 43 at 2; D. 44 at 7-8; D. 45-1.

The mediation privilege protects "[a]ny communication made in the course of and relating to the subject matter of any mediation and which is made in the presence of such mediator by any participant, mediator or other person."  Mass. Gen. L. c. 233, § 23C.  Courts have interpreted this provision to "confer[] blanket confidentiality protection on the mediation process, including an explicit prohibition on disclosure in judicial proceedings, without listing any exceptions."  <u>See, e.g.</u>, <u>Leary v. Geoghan</u>, No. 2002-J-0435, 2002 WL 32140255, at *3 (Mass. App. Ct. Aug. 5, 2002)

---

[2] The Court understands Plaintiffs' citations to the relevant statute to be to Mass. Gen. L. c. 233 § 23C, the operative state general law.  Plaintiffs contend that Insurers' statements are also inadmissible under Fed. R. Civ. P. 408 and Local Rule 16.4, D. 44, n.5, but do not make any separate arguments regarding same.

(single justice interlocutory order); see Zvi Constr. Co., LLC v. Levy, 90 Mass. App. Ct. 412, 420-1 (2016) (noting that Chapter 23C "gives broad confidentiality protection to mediation communications, barring disclosure in any judicial or administrative proceeding, and creating only one express exception for the mediation of labor disputes"). As noted by other courts, however, the mediation privilege is not "a non-waivable right." See Spruce Envtl. Tech., Inc. v. Festa Radon Tech., Co., 370 F. Supp. 3d 275, 278 (D. Mass. 2019) (citing Bobick v. U.S. Fid. & Guar. Co., 439 Mass. 652, 658 n. 11 (2003).

The Court also notes that the parties here signed a confidentiality agreement asserting "[a]ll statements made during the course of the mediation are privileged settlement discussions, … and are inadmissible for any purpose in any legal proceeding" and the applicable privilege "may not be waived except by a written express waiver signed by all parties and the mediator." D. 45–1 at 2; see Zvi Constr. Co, 90 Mass. App. Ct. at 420-21 (noting that the parties' mediation confidentiality agreement negotiated by sophisticated parties with legal counsel provided protection to mediation communications "even broader than §23C"). As Plaintiffs further assert, and Insurers do not dispute, none of the parties in this case provided an express, written waiver signed by all parties and the mediator, as required by the agreement, before making the disclosure at issue here. D. 44 at 1-2, 9-10; D. 49-1 at 2; D. 45 ¶ 10.

Insurers argue that Plaintiffs put mediation communications "at issue" and, therefore, that application of the mediation privilege would prevent Insurers from correcting Plaintiffs' misstatements. D. 48 at 9-12; see Bobick, 439 Mass. at 658 n.11; Savoy v. Richard A. Carrier Trucking, Inc., 178 F.R.D. 346, 349–50 (D. Mass. 1998) (ruling that a party waives the attorney-client privilege where, through an affirmative act such as filing suit; through such act, the party "put the protected information at issue by making it relevant to the case" and "application of the

privilege would have denied the opposing party access to information vital to [its] defense" in an action involving claims under c. 93A and c. 176D) (internal citation and quotation marks omitted). Insurers, however, overstate the scope of <u>Bobick</u>; there the court only found waiver "at least with respect to the issue whether such an offer indeed was made" (i.e., that the insurer there had extended an offer of $200,000). <u>Bobick</u>, 439 Mass. at 658 n.11. Even that ruling did not contemplate a waiver of the confidentiality of a broader swath of the parties' statements during the mediation as Insurers suggest. Moreover, unlike the parties in <u>Bobick</u>, the parties here are further bound by a confidentiality agreement requiring express, written waiver of same by all parties and the mediator before the waiving the confidentiality of same which included the provision that "[s]tatements are inadmissible for any purpose in any legal proceeding." D. 45-1 at 2.

Moreover, the Court disagrees with Insurers that Plaintiffs put the mediation communications "at issue" and thereby waived privilege when they included their demand letters as exhibits to the complaint. D. 1-3, 1-4. It is not clear how the material that Plaintiffs seeks to strike serve to "refute" their allegations that Insurers failed to meet their obligations under c. 93A and 176D, particularly where their initial, settlement demand response, D. 1-4 (dated March 22, 2021) predated the mediation (conducted in April and May 2021, D. 44 at 1). Moreover, even if any settlement offers were made during the mediation, Insurers did not supplement their responses to the initial demand after the mediation. D. 44 at 5. Even in response to Plaintiffs' renewed demand letter (dated January 31, 2023 and almost two years after the mediation), Insurers did not tender any settlement offer. D. 1-5, 1-7. It is difficult to see how Plaintiffs' attachments of such communications effectuate the breadth of waiver of confidentiality that Insurers appear to seek. Accordingly, the Court ALLOWS the motion to strike as to mediation communications in Insurers'

reply memorandum, D. 37 at 56, and portions of the Gallagher Affidavit, D. 38 ¶¶ 5-6 and D. 38-4,[3] and the Court has not considered them in the resolution of the motion for summary judgment.

**B.    <u>Motion for Summary Judgment</u>**

*1.    Summary Judgment in Related Actions*

There are two other related insurance coverage cases that have been before this Court, <u>Federated Mut. Ins. Co. v. Peterson's Oil Serv., Inc.</u>, No. 22-cv-10517, 2023 WL 6160434, at *1 (D. Mass. filed Apr. 7, 2022) ("<u>Federated</u>") and <u>U.S. Fire Ins. Co. et. al. v. Peterson's Oil Serv., Inc. et. al.</u>, No. 23-cv-40044, 2024 WL 3030538, at *1 (D. Mass. filed Apr. 13, 2023) ("<u>U.S. Fire</u>").[4]

In <u>U.S. Fire</u>, this Court denied the motion for summary judgment, by the same two Insurers as in this case, as to the absence of an occurrence and held that, as to the Peterson Defendants, they had a continuing duty "to defend the entire underlying action so long as they are still obliged to defend the negligence claim." <u>U.S. Fire</u>, 2024 WL 3030538 at *6. This Court did not reach the issue of Insurers' duty to indemnify the Peterson Defendants, noting it was premature to do so because the disputed facts in the Underlying Action remained unresolved and U.S. Fire and North River have a continuing duty to defend since they could not "establish 'an undisputed extrinsic fact that takes the case outside the coverage.'" <u>Id</u>. This Court also denied Insurers' motion for summary judgment as to the application of the Failure to Supply provisions and allowed summary judgment in favor of the Peterson Defendants, concluding that the "provisions are ambiguous and

---

[3] In light of this ruling, the Court does not reach the alternative arguments for excluding the portions of the Gallagher Affidavit for lack of personal knowledge and/or as hearsay or excluding the exhibit as hearsay. D. 44 at 13-15.

[4] The Court is aware that Federated has filed a notice of appeal in the <u>Federated Mut. Ins. Co.</u>, 22-10517, D. 91, and that U.S. Fire has filed a notice of appeal in <u>U.S. Fire Ins. Co. et al. v. Peterson's Oil Serv., Inc. et al.</u>, 23-40044, D. 62.

must be construed against [Insurers] to apply only to insufficient quantities of heating oil" and, therefore, coverage is not limited to $250,000 per policy year. Id. at *9. This Court then entered an order dismissing without prejudice the portion of Insurers' complaint regarding the duty to indemnify, declining to enter piecemeal judgment, and with the intent effectively to stay discovery until the completion of the trial in the Underlying Action (i.e., when the indemnification matter would be ripe). U.S. Fire, No. 23-cv-40044, D. 60; D. 74 (explaining same).

In Federated, this Court denied Federated's motion for summary judgment as to the Commercial Package Policy (Count I) and the Umbrella Policy (Count IV) because the Known-Loss provision does not preclude coverage of all Claimants' property damage and Federated had a duty to defend the Peterson Defendants in the entire Underlying Action.[5] Federated, 2023 WL 6160434 at *6. This Court again concluded that because the Underlying Action has not been resolved, it was premature to determine Federated's duty to indemnify and denied its motion for summary judgment for a declaratory judgment. Id. As to the Claimants' counterclaims regarding unfair settlement practices under Mass. Gen. L. c. 93A and c. 176D, this Court ruled that Federated adopted a plausible interpretation of the Known-Loss provision and allowed Federated's motion for summary judgment. Id. at *7. As it did in U.S. Fire, this Court entered an order dismissing without prejudice the portion of Federated's complaint regarding the duty to indemnify, again declining to enter piecemeal judgment, and with the intent effectively to stay discovery until the completion of the trial in the Underlying Action when the indemnification matter would be ripe. Federated Mut. Ins. Co., No. 22-cv-10517, D. 89; D. 109 (explaining same).

---

[5] The Claimants in Federated include the Plaintiffs in this action. See Federated Mut. Ins. Co., 2023 WL 6160434, at *1.

2.      *Declaratory Judgment on Duty to Indemnify (Count I)*

Insurers argue that this Court should dismiss Plaintiffs' claim for declaratory judgment on Insurers' duty to indemnify without prejudice in line with this Court's order in U.S. Fire. D. 29 at 26-27; see U.S. Fire, No. 23-cv-40044, D. 60. As previously noted, this Court dismissed the indemnification claims in the U.S. Fire and Federated related cases without prejudice, "[g]iven the parties' agreement that the indemnification issue is not ripe." U.S. Fire, No. 23-cv-40044, D. 60; Federated, No. 22-cv-10517, D. 89. This Court clarified in recent indicative rulings that it had "declined to enter 'piecemeal' judgment, Federated, D. 89, D. 96 at 20; U.S. Fire, D. 60, as to the 'duty to defend' matter, understanding that the 'duty to indemnify' issue, which is not currently ripe, might be re-asserted by the insurers after the resolution of the Underlying Action and discovery might be appropriate at that time." U.S. Fire, No. 23-cv-40044, D. 74; Federated, No. 22-cv-10517, D. 109.

Here, Plaintiffs acknowledge that a decision on the duty to indemnify should not be rendered until the Underlying Action is decided but assert that a stay or dismissal is not compulsory, and discovery should proceed while the Underlying Action advances to trial this year. D. 32 at 24. Because the Underlying Action has not reached its conclusion or otherwise resolved, Plaintiffs' declaratory judgment cause of action is not yet ripe, and the Court already "contemplated that both [related] cases would effectively be stayed until the completion of the trial in the Underlying Action," U.S. Fire, No. 23-cv-40044, D. 74, Federated, No. 22-cv-10517, D. 109, this Court concludes it is premature to reach the issue of the duty to indemnify and again refuses to enter piecemeal judgment on the duty to defend. See John Moriarty & Assocs., Inc. v. Zurich Am. Ins. Co., 102 Mass. App. Ct. 474, 488 (2023) (holding "an order regarding indemnification is premature" where "the indemnification issue may turn on facts proved in the

underlying action"); see also State Farm Fire and Cas. Co. v. Pike, 389 F. Supp. 3d 94, 99 (D. Mass. 2019) (recognizing that "[b]ecause [the] underlying liability has not been established, it is premature to rule on the indemnity issue"). Discovery regarding the duty to indemnify need not proceed now and is more appropriate after the completion of the scheduled trial in the Underlying Action in October, particularly as it was also this Court's intention to stay discovery in the related actions until then.

Accordingly, the Court DENIES Insurers' motion for summary judgment, D. 26, as to Count I of Plaintiffs' complaint, D. 1, regarding the duty to indemnify without prejudice.

3.    Claims Under Mass Gen. L. c. 93A and c. 176D (Count II)

Insurers also have moved for summary judgment on Plaintiffs' claims for unfair insurance claim settlement practices. D. 29 at 17–26. "Recovery under [chapter] 93A for a violation of [chapter] 176D, § 3(9), is unlikely when '[a]n insurance company . . . in good faith denies a claim a claim of coverage on the basis of a plausible interpretation of its insurance policy.'" McGilloway v. Safety Ins. Co., 488 Mass. 610, 618 (2021) (quoting Gulezian v. Lincoln Ins. Co., 399 Mass. 606, 613 (1987)); see Phoenix Bay Ins. v. Churchwell, 57 Mass. App. Ct. 612, 616-17 (2003) (same). "A plausible, reasoned legal position that may ultimately turn out to be mistaken—or simply, as here, unsuccessful—is outside the scope of the punitive aspects of the combined application of [G. L.] c. 93A and c. 176D." Guity v. Commerce Ins. Co., 36 Mass. App. Ct. 339, 343 (1994).

Moreover, "an insurer's duty to settle does not arise until 'liability becomes reasonably clear.'" Scott v. Vermont Mut. Ins. Co., No. 07-12081-DPW, 2011 WL 4436984, at *8 (D. Mass. Sept. 22, 2011) (quoting Mass. Gen. L. c. 176D, § 3(9)(f)). "The question whether liability is reasonably clear depends on 'whether a reasonable person, with knowledge of the relevant facts

and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff.'" Id. (quoting Nyer v. Winterthur Int'l, 290 F.3d 456, 461 (1st Cir. 2002)). "Even where an insurer can satisfy the test for objective reasonableness, it may still be liable under G.L. c. 93A if the plaintiff can establish that the insurer was motivated by subjective bad faith." Liquor Liab. Joint Underwriting Assoc. of Mass. v. Great American Ins. Co., Nos. 96-3127, 96-4675, 2003 WL 21048793, at *30 (Mass. Super. April 14, 2003) (citing Parker v. D'Avolio, 40 Mass. App. Ct. 394, 396 (1996)). "'The possession of a plausible defense does not automatically preclude a finding of a [G.L. c.] 93A violation; the defense must be clearly articulated and asserted in good faith.'" Id. (quoting Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 40–41 (1st Cir. 2000)); see Direnzo Towing & Recovery, Inc. v. Owner-Operator Indep. Drivers Association, Inc., No. 16-cv-10073-TSH, 2018 WL 1940310, at *14–15 (D. Mass. Mar. 9, 2018) (denying summary judgment as to c. 93A claim where insured alleged unfair settlement practice under Mass. Gen. L. c. 176D § 3(9)(g)).

Insurers assert that because their positions and applications of the "Occurrence" requirement and of the Failure to Supply Endorsement in their insurance policies were plausible and gave them a basis to deny or limit coverage, liability did not become "reasonably clear," and, therefore, there was no duty to settle and summary judgment of Count II in their favor is warranted. D. 29 at 22-24, 26.

With respect to coverage, Insurers' position is that the Peterson Defendants' intentional act of blending biodiesel with heating fuel that it then provided to unknowing customers did not constitute an "occurrence" covered by the Policies. Id. at 21–24; D. 37 at 7–9. As this Court explained in U.S. Fire, coverage by Insurers pursuant to the Policies depends on the interpretation of the term "occurrence" and the Court rejected their argument that the claims against the Peterson

Defendants fell outside of coverage of the Policies and denied Insurers' motion for summary judgment on the ground that the property damage was not caused by an occurrence.  U.S. Fire, 2024 WL 3030538 at *4-6.  As to the Failure to Supply endorsement (i.e., provision that excluded or limited liability where the property damage "aris[es] out of the failure of any insured to adequately supply gas, oil, water, electricity or steam"), the Court concluded the placement of "adequately" or "adequate" before "supply" made the Failure to Supply provisions at least ambiguous as to whether the modified phrase refers to quality and/or quantity.  Id. at *8-9. Accordingly, this Court also denied Insurers' motion for summary judgment that its coverage was limited by the Failure to Supply provision and ruled that, "as a matter of law, that the Failure to Supply provisions are ambiguous and must be construed against insurer Plaintiff to apply only to insufficient quantities of heating oil."  Id. at *9.

Although the Court does not agree with Insurers that Plaintiffs' claims under c. 93A and c. 176D are "unsustainable as a matter of law" because this Court held in U.S. Fire that "it would be premature for the Court to rule on [the] duty to indemnify the Peterson Defendants until the disputed facts in the underlying litigation are resolved," Id. at *6; D. 29 at 22; D. 37 at 5; see Clegg v. Butler, 424 Mass. 413, 418 (1997) (rejecting the contention that "a third-party claimant has no right to a settlement offer by the insurer under [c. 176D] prior to a trial or entry of judgment"), the Court also does not conclude that Insurers are entitled to summary judgment on the c. 93A and c. 176D claims at this point.

Although Insurers' interpretation of occurrence may have been plausible, the Court denied summary judgment as to its position that it was entitled to deny coverage on this base in U.S. Fire. Further, this Court not only denied summary judgment in Insurers' favor as to its interpretation of the Failure to Supply endorsement, but concluded, as a matter of law, that any ambiguity as to

15

same must be interpreted in favor of the insured's interpretation.  U.S. Fire, 2024 WL 3030538 at

*9.  Although the Court noted that "[w]hile it is possible to read 'adequately supply' to refer to

quality and quantity, reasonably intelligent minds could differ as to the proper interpretation," id.

at *8, this is far from compelling summary judgment on the c. 93A and c. 176D claims for the

Insurers, and Plaintiffs have at least raise a material issue of fact about whether the coverage and

exclusion position the Insurers have taken is reasonable and plausible.

As previously noted, the Court's analysis does not end after determining whether Insurers'

coverage positions were plausible.[6]  Commercial Union Ins. Co., 217 F.3d at 40–41 (noting that

"[t]he possession of a plausible defense does not automatically preclude a finding of a 93A

violation; the defense must be clearly articulated and asserted in good faith").  Pursuant to Chapter

176D, one form of unfair claim settlement practice is "[f]ailing to provide promptly a reasonable

explanation of the basis in the insurance policy in relation to the facts or applicable law for denial

of a claim or for the offer of a compromise settlement."  Mass. Gen. L. c. 176D, § 3(9)(n).  This

provision "does not impose 'a particularly stringent' obligation on an insurer when explaining its

basis for denying a claim," Southern Worcester Cnty. Regional Vocational School Dist. v. Utica

Mut. Ins. Co., No. 06-40230-FDS, 2010 WL 3222015, at *12 (D. Mass. Aug. 13, 2010)

(concluding that although the insurer's explanation of its denial of coverage "was minimal at best"

and "while far from exemplary, was not so unreasonable as to constitute an unfair or deceptive act

or practice within the meaning of Chapter 93A") (quoting Pediatricians, Inc. v. Provident Life &

---

[6] The Court, obviously, is aware that it dismissed the c. 93A and c. 176D counterclaims in
Federated, 2023 WL 6160434 at *7.  In that case, unlike here, the Claimants (same as Plaintiffs
here) did not develop any arguments challenging the sufficiency of the insurer's articulation of
their coverage positions or whether those positions were being advanced in bad faith.  Federated,
22-cv-10517, D. 57 at 20.

Acc. Ins. Co., 965 F.2d 1164, 1172 (1st Cir. 1992), but an insurer must not be evasive or obstructionist providing its position.  See Com. Union Ins. Co, 217 F.3d at 41 (concluding that existing record supported that reinsurer "never communicated to [insurer] a decision to deny coverage . . . [i]nstead it engaged in a pattern of 'evasiveness and obstructionism'").

Here, Plaintiffs argue that Insurers did not clearly articulate or explain their asserted coverage defenses in their initial response to Plaintiffs' demand for settlement pursuant to c. 93A and c. 176D, which focused exclusively on liability (as opposed to coverage) being reasonably unclear, and only at a later point did Insurers assert the coverage defenses that "had always been available to them." D. 32 at 7, 9–11, 18; see D. 32-2 to 32-3.

Insurers' initial demand response, dated March 22, 2021, stated that liability and damages were not reasonably clear in the Underlying Action and there was thus not a duty to settle. D. 32–3 at 2.  Specifically, Insurers noted the absence of a negligence finding as to the Peterson Defendants, that Plaintiffs' affidavit regarding causation and damages was speculative and insufficient to show liability was reasonable clear, that class certification was speculative, and concerns with the damage calculations and demand amount. D. 32-3 at 2-3.  This response also did not reference or explain Insurers' coverage defenses.  See generally D. 32-3.  The Insurers' March 1, 2023 response to Plaintiffs' renewed demand letter also focused on whether liability or damages was reasonably clear, D. 32-5 at 2-3, and noted their position that there was no covered "occurrence" under the Policies and made reference that "all of the Policies exclude coverage for claims arising from Peterson's failure to adequately supply oil, which is the crux of all of Plaintiffs' and the Class's claims, regardless of whether such claims are couched in terms of breach of contract, fraud, or negligence."  Id. at 4.

Insurers correctly note that "[w]here there is uncertainty as to whether an insurer owes a duty to defend, the insurer has the option of providing the insured with a defense under a reservation of rights, [and] filing a declaratory judgment action to resolve whether it owes a duty to defend or to indemnify[.]" Metro. Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352, 358–59 (2011); D. 37 at 16. It is undisputed that Insurers have been defending the insureds pursuant to a reservation of rights. D. 28 ¶ 2; D. 33 at ¶ 2. Still, viewing the evidence in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have presented a genuine dispute of material fact regarding Insurers' articulation of their coverage defenses to the Plaintiffs.

Insurers also have an obligation to act in good faith concerning settlement. DiMarzo v. Am. Mut. Ins. Co., 389 Mass. 85, 97 (1983). "'Good faith' for purposes of G.L. c. 93A is defined as 'the insurer making settlement decisions without regard to the policy limits and the insurer's 'exercise of common prudence to discover the facts as to liability and damages upon which an intelligent decision may be based.'" Liquor Liab., 2003 WL 21048793, at *29–30 (quoting Bolden v. O'Connor Café of Worcester, Inc., 50 Mass. App. Ct. 56, 59 n. 9 (2000)). "Bad faith in the context of an action under G.L. c. 93A may be either objective or subjective." Id. (quoting Parker, 40 Mass. App. Ct. at 396). "Objective bad faith may be found where a potential defendant offers 'much less than a case is worth in a situation where liability is either clear or highly likely.'" Id. "Under the objective bad faith analysis, the key inquiry is whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff." Id. (citing Demeo v. State Farm Mut. Auto. Ins. Co., 38 Mass. App. Ct. 955, 956–57 (1995)). Even where an insurer can satisfy the test for objective

reasonableness, it may still be liable under G.L. c. 93A if the plaintiff can establish that the insurer was motivated by subjective bad faith.  Id. (citing Parker, 40 Mass. App. Ct. at 396).

Plaintiffs contend that Insurers have not advanced their coverage positions in good faith and are delaying settlement because, among other things, they did not raise and explain the basis of their coverage positions "at the outset" in response to Plaintiffs' demand for settlement; Insurers' settlement denials lacking rebuttal evidence suggest they have not investigated Plaintiffs' claims "based upon all available information" pursuant to Chapter 176D, § 3(9)(d);  and Insurers have misrepresented Plaintiffs' negligence claim as a contract claim and appear unfamiliar with procedural details in the Underlying Action.  D. 32 at 17–20.

Considering just one of Plaintiffs' contentions above, the Court notes that Plaintiffs argue Insurers have been acting in bad faith as suggested by Insurers failing to present rebuttal evidence, resulting from any investigation, to Plaintiffs' demand letters containing expert reports, scientific research and references to witness testimony.  D. 32 at 19; see D. 32–3, 32–5, 32–6.  Although Chapter 176D, § 3(9)(d) only requires reasonable investigation, Pediatricians, Inc., 965 F.2d at 1164, Insurers have not presented sufficient response to rebut Plaintiffs' accusation that they have not conducted an investigation that complies with the obligations set forth by c. 176D.  See generally D. 37.  Insurers' response letters note they "will continue to investigate this matter in compliance with Chapter 176D and Massachusetts law," D. 32-3 at 4; see D. 32-5 at 4, but they have presented no evidence regarding the scope of their investigation.  See Terry v. Hosp. Mut. Ins. Co., 101 Mass. App. Ct. 597, 605-606 (2022) (noting that in its investigation, insurer "relied on self-serving statements," "consistently found reasons to disregard unfavorable evidence" and "did not apply the same exacting scrutiny to favorable evidence").

Considering the record in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have presented genuine disputes of material facts regarding Insurers' clear articulation of their coverage defenses to Plaintiffs and whether Insurers have proceeded in good faith concerning settlement. Accordingly, summary judgment at this juncture is not warranted as to Count II of the complaint and the Court DENIES Insurers' motion for summary judgment as to this claim.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS Plaintiffs' motion to strike, D. 43, and the Court DENIES Insurers' motion for summary judgment, D. 26.[7]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[7] In light of the Court's denial of the Insurers' motion for summary judgment, D. 26, the Plaintiffs' request for additional discovery pursuant to Fed. R. Civ. P. 56(d) is denied as moot. D. 32 at 22.

In light of the denial of Insurers' motion for summary judgment, D. 26, and to the extent that Plaintiffs seek leave to amend the complaint at the end of their opposition, D. 32 at 23-24, the Court denies that request without prejudice.